UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEEDOM FINANCIAL SERVICES,
LLC,

    Plaintiff,

v.                                          CASE NO.: 8:10-cv-917-T-23EAJ

GEER & ASSOCIATES, P.C., and
CLAUDE WILSON GEER, IV,

    Defendants.
_____/

**<u>ORDER</u>**

The plaintiff sued (Doc. 2) in state court for alleged accounting malpractice. The defendants remove (Doc. 1) and assert federal jurisdiction based on diversity of citizenship.[1] The defendants move (Docs. 3, 4) both to dismiss for lack of personal jurisdiction and to transfer. The plaintiff opposes (Docs. 7, 8) each motion.

<u>Allegations of the Complaint</u>

The plaintiff ("Leedom") is a financial services company based in Sarasota, Florida. Pursuant to a "participation agreement," Stratus Group, Inc., ("Stratus")—a "buy-here-pay-here" car dealership that both leases cars and collects the lease payments—sold to Leedom "an undivided interest in certain vehicle leases." In

---

[1] The plaintiff is a Florida corporation, with a principal place of business in Sarasota, Florida. The defendant Geer & Associates is a Georgia corporation, and the defendant Claude Wilson Geer, IV, is a citizen of Georgia. The plaintiff seeks compensatory damages in the amount of $20,000,000, plus incidental and consequential damages in the amount of $20,000,000 and punitive damages in the amount of $10,000,000.

exchange for the interest, Leedom paid to Stratus fifty percent of the unpaid principal and interest on each lease.  As collateral, Leedom procured a security interest "in the unsold portion of the leases and all other personal property of Stratus."  By December, 2007, Stratus's obligation under the participation agreement exceeded $30 million.

The defendants audited Stratus's financial statements in 2005, 2006, and 2007. The defendants knew of the Leedom-Stratus participation agreement.  The "auditors' report" states that the defendants prepared the financial statements "for the purpose of complying with a loan agreement," meaning the participation agreement between Leedom and Stratus.  The report states also that the report "is intended solely for the information and use of the board of directors and management of Stratus Group, Inc., and Leedom Financial Services, LLC . . . ."

In March, 2008, Leedom and Stratus entered another agreement, in which Leedom consented to lend Stratus not more than $15 million "on a revolving basis," with three persons as guarantors and Stratus's property (including vehicles and vehicle leases) as security.  Stratus provided Leedom with Stratus's audited and unaudited financial statements (as prepared by the defendants).  Leedom relied on the statements in entering the loan agreement.  Between March, 2008, and May, 2008, Leedom advanced more than $14 million to Stratus, which advance brought Stratus's total indebtedness to Leedom to more than $42 million.

In May, 2008, Leedom received a "anonymous tip that the number of Stratus'[s] vehicle leases and the amounts due . . . were overstated."  Upon investigation, Leedom discovered that several purported lessees possessed no vehicle leased by Stratus.

Both the chief executive officer and chief financial officer ("CFO") of Stratus admitted (1) that seven hundred of the leases were false and (2) that Stratus "had been kiting checks in an attempt to falsely establish that Stratus was liquid." In July, 2008, Leedom terminated Stratus's rights under each agreement and demanded payment. Owing Leedom in excess of $42 million, Stratus declared bankruptcy. The defendants later hired Stratus's CFO to lead the defendants' "Financial Reporting and Assurance team." Leedom sues and alleges that Leedom suffered over $20 million in damages as a result of the defendants' breach of "accounting standards and practices."

Discussion

*1. Personal Jurisdiction*

The defendants argue (without a supporting memorandum of legal authority)[2] that this court lacks personal jurisdiction over the defendants under Florida's long-arm statute, Section 48.193, Florida Statutes. "The Florida long-arm statute permits the exercise of personal jurisdiction over a non-resident defendant for a cause of action arising out of a tort committed in Florida." Seminole Transp. Specialists, Inc. v. PDM Bridge, LLC, 2009 WL 3822773, *2 (M.D. Fla. 2009) (citing Fla. Stat. § 48.193). The statute permits the exercise of personal jurisdiction if "the 'foreign tortious act cause[d] injury within the forum' even though the tortious act occurred outside Florida." 2009 WL 3822773 at *2 (quoting New Lenox Indus., Inc. v. Fenton, 510 F. Supp. 2d 893, 902 (M.D. Fla. 2007) (Hodges, J)); Deloitte & Touche v. Gencor Indus., Inc., 929 So. 2d 678, 683 (Fla. 5th DCA 2006) (finding personal jurisdiction under the long-arm statute based

---

[2] On this basis alone, the defendant's motion is both deficient under the applicable rule and susceptible to summary denial under Local Rule 3.01(a).

- 3 -

on the defendant's allegedly sending a false audit report to Florida, the defendant's knowing that the plaintiff would rely on the audit report in Florida, and the plaintiff's actually relying on the audit report in Florida); Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002) (finding that a tortious act as defined in Section 48.193 "can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida."). "[C]ommunications from outside the state will satisfy minimum contacts so long as the commercial actor's efforts were purposefully directed toward a resident of Florida." Deloitte & Touche, 929 So.2d at 680.

Although the defendants both are citizens of Georgia and performed professional services in Georgia, the defendants' alleged tortious conduct caused injury to the plaintiff in Florida. The defendants (1) provided an audit report for the benefit of the plaintiff in Florida and (2) knew that the plaintiff would rely on the audit report in Florida. The plaintiff relied on the report and suffered damages in Florida. Accordingly, Florida's long-arm statute permits this court's exercising jurisdiction over the defendants.

*2. Venue*

The defendants argue that this action is susceptible to transfer, pursuant to 28 U.S.C. § 1391, to the Middle District of Georgia. However:

> [i]n removed actions the general venue provision, 28 U.S.C. § 1391, does not apply. Instead, § 1441(a), by requiring removal to the district court for the district in which the state action is pending, properly fixes the federal venue in that district. Thus, once a case is properly removed to federal court, a defendant cannot move to dismiss on § 1391 venue grounds.

Hollis v. Florida State University, 259 F.3d 1295, 1299 (11th Cir. 2001). Accordingly, the defendants' objection to venue is unavailing.

Conclusion

Accordingly, each of the defendants' motions (Docs. 3, 4) is **DENIED**.

ORDERED in Tampa, Florida, on May 7, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE